IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PHOEBE JEAN GREEN,

OPINION AND ORDER

Plaintiff,

v.                                                                      20-cv-295-slc

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

Defendant.

Plaintiff Phoebe Green seeks judicial review of a final decision of defendant Kilolo Kijakazi, Commissioner of the Social Security Administration,[1] denying Green's claim for disability insurance benefits (SSDI) under the Social Security Act.  42 U.S.C. § 405(g).  Green contends that the administrative law judge (ALJ) who denied her claim erred by failing to account for the unique nature of fibromyalgia in dismissing Green's subjective symptoms and by giving great weight to the opinion of a state agency consulting physician.  Because I am not persuaded that the issues raised by Green warrant remand, I am affirming the Commissioner's decision.

**FACTS**

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case:

---

[1] Kilolo Kijakazi has replaced Andrew Saul as the head of SSA.  I have amended the case caption accordingly.

On August 29, 2016, Green filed an application for a period of disability beginning on May 10, 2016.  AR 102.  She alleged disability based on a muscle and ligament disorder, fibromyalgia, high blood pressure, high cholesterol, and carpal tunnel syndrome. AR 108.  After Green's application was denied initially and on reconsideration, ALJ Karen Sayon held a video administrative hearing on January 24, 2019, at which Green and a vocational expert (VE) testified. AR 102.  Green was represented by an attorney. *Id.*  The ALJ issued a written decision on March 27, 2019, finding that Green was not disabled.

The ALJ determined that Green is severely impaired by fibromyalgia, plantar fasciitis, obstructive sleep apnea, and obesity but retained the residual functional capacity (RFC) to perform a full range of light work.  AR 104, 108.  In reaching this decision, the ALJ placed great weight on the opinion of state agency physician Dr. Patrick Chan, who reviewed the record at the initial level of review on October 26, 2016.  AR 111 (citing AR 158).  The ALJ also considered but was not persuaded by Green's self-reported symptoms and limitations and statements submitted by her family members. AR 110-12.  Relying on the testimony of the VE, the ALJ found that Green could perform her past work as a warehouse picker and server/cashier. AR 113.  After the Appeals Council denied Green's appeal, she filed her appeal in this court.

**OPINION**

In reviewing an ALJ's decision, I must determine whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (citations omitted).  This deferential standard of review means

that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)).  We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision.  Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Green contends that the ALJ erred by not adequately accounting for Green's fibromyalgia in evaluating Green's subjective symptoms and by giving too much weight to the opinion of state agency reviewing physician Dr. Patrick Chan, who found Green capable of performing light work.  Green argues that the ALJ's assessment of her fibromyalgia is flawed because the ALJ minimized the nature and extent of her fibromyalgia, made findings and provided reasons that have little to do with fibromyalgia (e.g., full range of motion, full strength, and normal gait), overemphasized the significance Green's daily activities, and improperly rejected Green's subjective complaints while adopting the opinion of Dr. Chan.  In particular, Green contends that the ALJ failed to appreciate the unique symptoms, diagnostic methods, and treatment methods associated with fibromyalgia, including that fibromyalgia is often assessed based on a patient's subjective reporting of symptoms.  *See* SSR 12-2p, § VI(E)(1) ("Widespread

3

pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories."); *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018) ("The extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment."); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (ALJ may not reject claimant's reports of pain from fibromyalgia solely because there is no objective medical evidence supporting it).   But Green has not shown that the ALJ erred in her consideration of her fibromyalgia, subjective symptoms, or her consideration of Dr. Chan's opinion.

Contrary to Green's suggestion, the ALJ did not dismiss the severity of her fibromyalgia or fail to consider Green's subjective complaints of pain.  *See* SSR 16-3p ("We will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them.").  The ALJ provided a thorough discussion of Green's fibromyalgia treatment, summarizing three years of treatment notes, imaging studies, and Green's providers' objective examinations and medication decisions.  AR 109-10.  The ALJ discussed Green's subjective complaints—both written reports and hearing testimony—of widespread muscle and nerve pain, difficulty sleeping, fatigue, hand numbness, being able to lift only a gallon of milk, and difficulties standing, walking, and sitting for very long.  AR 108.  The ALJ found that Green's fibromyalgia is a severe impairment and that her fibromyalgia, along with other impairments, supported restricting Green to light work.  But for several reasons, the ALJ did not think that Green's fibromyalgia necessitated further limitations or precluded her from working, as Green's attorney argued at the hearing.  AR 109.

The ALJ cited numerous examination findings that were normal or otherwise unremarkable: Green often demonstrated full strength, good range of motion, intact sensation, a normal gait, normal neurovascular findings, and clear lungs. AR 110 (citing AR 543, 547, 570, 588, 635, 658, 792, 818, 826, 1164, 1398, 1410). Despite Green's complaints of ongoing and widespread pain, her physical examinations also regularly showed that she was not in acute distress. The ALJ explained that Green's fibromyalgia had been treated conservatively and somewhat effectively with medications, periodic injections, and physical therapy. AR 110-11. She noted that Green had required only minimal pain management and that her fibromyalgia remained stable on her medications. AR 111 (citing AR 1398-99). Although Green was offered other treatment options, including a referral to a pain psychologist in June 2017 and pool therapy in March 2018, she failed to take advantage of them.[2] *Id.* (citing AR 759 and 1157).

The ALJ also discussed Green's daily activities. She noted that Green walks about an hour three times a week, reported being able to be on her feet two or three hours before having pain, remains active by walking around Walmart, often watches her young grandchildren,[3] drove her brother's truck from Indiana to Florida, cooks meals daily from scratch, and cleans the house. AR 110-11. Although these activities do not by themselves equate to working a 40-hour

---

[2] Contrary to Green's assertion, the ALJ asked her about her noncompliance with pool therapy at the hearing, and Green explained that she stopped going because insurance would not pay for it. AR 137. However, an ALJ is not required to accept a claimant's explanation for failing to pursue treatment and, after considering any explanation, may draw a negative inference from such a failure. *See Morrison v. Saul*, 806 Fed. App'x 469, 474 (7th Cir. 2020). In any event, Green's failure to comply with recommended treatment was just one factor among several that the ALJ used to analyze Green's allegations. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722-723 (7th Cir. 2009) (not all of ALJ's reasons have to be sound as long as enough of them are).

[3] Again contrary to Green's assertion, the ALJ specifically considered Green's testimony that she could only babysit when her wife was present. AR 111. However, the ALJ discounted this explanation, finding that the medical records told a different story.

work week, the ALJ was entitled to find that they showed that Green was not as limited as she

alleged. *Burmester*, 920 F.3d at 510; *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t

is entirely permissible [for an ALJ] to examine all of the evidence, including a claimant's daily

activities, to assess whether testimony about the effects of his impairments was credible or

exaggerated.") (citation and internal quotation omitted).  For these reasons, the ALJ found that

Green's statements regarding her subjective symptoms were not entirely consistent with the

medical evidence and did not support her allegations of disabling pain.  AR 108.

> With respect to the opinion evidence, the ALJ gave great weight to Dr. Chan's opinion

that Green was capable of light level work, noting that his opinion was consistent with the

unremarkable objective findings in the record, including Green's normal strength, range of

motion, sensation, and gait.  AR 111.  Although Green also provided opinions from three of her

treatment providers, AR 112, none of them stated any opinion regarding her fibromyalgia or

assessed work-related limitations associated with the condition.  *See Best v. Berryhill*, 730 Fed.

App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained

in the record that indicated greater limitations than those found by the ALJ.") (internal

quotation marks and citation omitted); *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010) (ALJ

reasonably found it "illuminating and persuasive on its face" that no doctor found greater

limitations than did the ALJ).  In fact, in May 2018, Dr. Mary Ellen Sabourin wrote that she

was "not sure why [Green] is disabled" and was "not comfortable signing " her disability form.

AR 1172.  The ALJ also acknowledged the third-party, non-medical reports submitted by

Green's family members, but found that they were vague, did not provide specific workplace

abilities or limitations, and were unsupported by the objective evidence.  AR 112-13.

Green takes issue with the above aspects of the ALJ's discussion, arguing that findings related to muscle strength, range of motion, clear lungs, lack of swelling, and gait have nothing to do with fibromyalgia. *See, e.g., Lawson v. Astrue*, 695 F. Supp. 2d 729, 744 (S.D. Ohio 2010) ("Individuals suffering from fibromyalgia 'manifest normal muscle strength and neurological reactions and have a full range of motion.'") (quoting *Rogers v. Commissioner*, 486 F.3d 234, 44 (6th Cir. 2007)).  She also argues that fibromyalgia symptoms fluctuate and treatment for the condition is by nature conservative and even requires the patient to keep active and exercise. All of these things might be true, but the ALJ was entitled to consider medical findings related to muscle strength, range of motion, joint swelling, and gait in evaluating Green's statements regarding the extent of her symptoms and functioning and making an RFC assessment.  *See, e.g., Lloyd v. Berryhill*, 682 Fed. App'x 491, 496-97 (7th Cir. 2017) (citing normal gait as support for greater walking abilities than those alleged by claimant and treating physician).  The ALJ also was permitted to consider Green's daily activities, treatment history, and examination findings. As the Seventh Circuit recently clarified:

> The Social Security Administration's guidance on evaluating fibromyalgia, *see* SSR 12-2P, limits only the evidence used to diagnose the disease as a medically determinable impairment (step two in the five-step analysis).  It does not limit the evidence an ALJ can consider in evaluating the severity of fibromyalgia for purposes of determining a residual functioning capacity.  Further, the Social Security Administration's guidance on how to evaluate pain (fibromyalgia's chief symptom) directs ALJs to consider the very symptoms that the ALJ considered here.  *See* 20 C.F.R. § 404.1529(c)(2) ("[E]vidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms.").

> *Gebauer v. Saul*, 801 Fed. App'x. 404, 410 (7th Cir. 2020).

*See also Apke v. Saul*, 817 Fed. App'x 252, 258 (7ᵗʰ Cir. 2020) (citing same and affirming ALJ who found claimant's daily activities and minor doses of medications and injections were inconsistent with allegations of debilitating fibromyalgia pain).

Therefore, contrary to Green's contention, the ALJ did not err by considering objective medical findings, treatment decisions, or Green's activities in discounting her self-reports of pain and limitations due to her fibromyalgia and adopting Dr. Chan's opinion regarding her ability to perform light work.  *See also Boardman v. Saul*, No. 19-cv-546-jdp, 2021 WL 822558, at *3 (W.D. Wis. Mar. 4, 2021) (relying on *Gebauer* for similar conclusion); *Lathrop v. Saul*, No. 19-cv-895-slc, 2020 WL 7078829, at *4-5 (W.D. Wis. Dec. 3, 2020) (same).

In a footnote in her reply brief, Green acknowledges the decisions in *Gebauer* and *Lathrop* but argues that *Gebauer* is an unpublished and non-binding decision that is wrongly decided.  She asserts that contrary to the court's holding in *Gebauer*, SSR 12-2p outlines the relevant evidence that may be considered in evaluating fibromyalgia and limits it to subjective statements and the means of attempted pain relief:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

> SSR 12-2p at *5.

Green's argument misses the mark.  The above-cited statement from SSR 12-2p appears in a paragraph discussing the evaluation of symptoms and the extent to which they may limit a person's capacity for work, and it clearly anticipates that the ALJ will review the objective

8

medical evidence in addition to the other listed evidence.  Other statements in the ruling also note that the ALJ will rely on objective medical evidence in assessing the functional effects of a claimant's fibromyalgia.  SSR 12-2p at *4 ("In addition to obtaining evidence from a physician, we may request evidence from other acceptable medical sources . . . to evaluate the severity and functional effects of FM.").  Further, the holding in *Gebauer* is consistent with past Seventh Circuit decisions holding that "the severity of [fibromyalgia] varies, and the claimant's subjective complaints need not be accepted insofar as they clash with *other evidence* in the record."  *Manley v. Barnhart*, 154 Fed. App'x 532, 536 (7th Cir. 2005) (emphasis added).

Here, the ALJ complied with SSR 12-2p by considering all of the relevant evidence in the record, including Green's subjective statements and attempts to obtain pain relief. Although some people may have such a severe case of fibromyalgia that they may be totally disabled, others will not.  *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996); *see also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("It is not enough to show that she had received a diagnosis of fibromyalgia with a date of onset prior to the expiration of the insured period, since fibromyalgia is not always (indeed, not usually) disabling.").  Here, the ALJ reasonably concluded from the evidence of record that Green was not totally disabled due to her fibromyalgia.

Although it is possible that the ALJ could have reached a different conclusion with respect to the allegedly disabling effects of Green's fibromyalgia, it is not this court's role to second guess an ALJ's well-supported decision.  *See Johnson v. Berryhill*, 745 Fed. App'x 247, 251 (7th Cir. 2018) (even though claimant "offered evidence that could reasonably support a finding of total disability," ALJ could still find fibromyalgia not disabling because "[r]esolving the conflicting

evidence about such a close case, in which subjective pain is so critical, is a job for the ALJ in the first instance"). As the Seventh Circuit has explained with respect to fibromyalgia:

> Since pain is subjective and affects people in different ways, it is difficult to determine how much pain is present and how great its effects are. Fibromyalgia can have a wide range of effects. Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters.

*Kolar v. Berryhill*, 695 Fed. App'x 161, 162 (7th Cir. 2017).

Because I conclude that the ALJ's assessment of Green's fibromyalgia, her subjective symptoms, and Dr. Chan's opinion are supported by substantial evidence, I will affirm the Commissioner's decision denying benefits.

**ORDER**

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Commissioner of Social Security, denying plaintiff Phoebe Green's application for disability benefits, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 22nd day of September, 2021.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

10